(No. 96-CV-2872—)

*In re* APPLICATION OF MARIA C. RODRIGUEZ-BIBIAN

*Order filed September 24, 1997.*
*Order filed April 20, 1999.*

CODO, BONDS, ZUMSTEIN & KONZELMAN (MICHAEL RENZI and BRUCE ZUMSTEIN, of counsel), for Claimant.

JIM RYAN, Attorney General (DONALD C. McLAUGHLIN, JR., Assistant Attorney General, of counsel), for Respondent.

ORDER

PER CURIAM.

This claim arises out of an incident that occurred on April 6, 1995. Maria C. Rodriguez-Bibian, wife of the deceased victim, Jose H. Bibian, seeks compensation pursuant to the provisions of the Crime Victims Compensation Act, hereafter referred to as the Act. 740 ILCS 45/1 *et seq.*

This Court has carefully considered the application for benefits submitted on March 29, 1996, on the form prescribed by the Attorney General and an investigatory report of the Attorney General of Illinois which substantiates matters set forth in the application. Based upon these documents and other evidence submitted to the Court, the Court finds:

1. That on April 6, 1995, the victim was fatally beaten by an offender who was not known to him. The incident occurred near Archer Road and State Street, Lemont Township, Illinois. Police investigation revealed that, prior to the incident, the victim was driving his pickup truck when he observed the offender and two of the offender's companions involved in a verbal altercation along the side of the road. The victim approached them in

his pick-up truck, got out of his vehicle and involved himself in the group's private dispute. Upon intervening in the dispute, the victim immediately became an active participant in a verbal altercation with one of the offender's companions. During this verbal confrontation, the victim initiated a fight by obtaining a baseball bat type club from his vehicle and began striking one of the offender's companions in the head and arms. The offender and his other companion responded to the victim's attack and began to struggle with the victim. As the victim continued to fight, the offender was able to take the club away from the victim. The offender then struck the victim in the head several times with the victim's club, causing the victim to sustain fatal head injuries. The offender's two companions were subsequently acquitted of all criminal charges as a result of the incident. The offender was apprehended, prosecuted and convicted of second degree murder.

2. That section 10.1 of the Act indicates factors used to determine entitlement to compensation. Specifically, section 10.1(d) of the Act states that an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his injury or death, or to the extent to which any prior criminal conviction or conduct of the victim may have directly or indirectly contributed to the injury or death of the victim.

3. That it appears from the investigatory report and the police report that the victim initiated a fight by striking the offenders with a baseball bat type club during a verbal altercation. As a result of this action, the victim sustained fatal head injuries after being beaten by one of the offenders with his own club.

4. That the victim's conduct contributed to his death to such an extent as to warrant that the Claimant be denied entitlement to compensation.

5. That this claim does not meet a required condition precedent for compensation under the Act.

It is hereby ordered that this claim be, and is hereby, denied.

## ORDER

MITCHELL, J.

This claim is before the Court on the crime victims compensation application ("Application") of Claimant, Maria C. Rodriguez-Bibian, seeking compensation pursuant to the Crime Victims Compensation Act. (740 ILCS 45/1 *et seq.*) The claim arises out of an incident that occurred on April 6, 1995, when Claimant's husband, Jose H. Bibian, was killed during an altercation. On September 24, 1997, the Court entered an order denying the claim. Paragraph 1 of the order describes the incident as reported in the Attorney General's investigatory report. The order states that the deceased victim observed a verbal altercation amongst a group of people along the side of the road. He stopped his vehicle and, after approaching the group, he became an active participant with one of the offender's companions. The victim initiated a fight by obtaining a baseball bat type club from his vehicle and striking one of the offender's companions in the head and arms. The offender and another companion struggled with the victim, took the club away from him and struck him in the head several times causing his death. The offender was convicted of second degree murder. Section 10.1(d) of the Act states, in part, that an award shall be reduced or denied according to the extent to which the victim's acts or conduct provoked or contributed to his death. The Court concluded that the victim's conduct contributed to his death to such an extent as to warrant that Claimant be denied entitlement to compensation.

On October 15, 1997, Claimant filed a request for review of the denial. Claimant acknowledged that the victim did use a weapon. She alleged that the victim's intentions were peaceful in nature and he was trying to help out a bad situation. It is asserted that the victim's conduct is best viewed as the actions of a good samaritan rather than someone engaged in criminal activity and the focus should be on the victim's principal goal to bring about a peaceful resolution of the parties' argument. Claimant asserts that the victim "became threatened and it appeared violence would be imminent." Jose seized the weapon to separate the parties. It is also asserted that the victim "was attempting to intervene to stop aggressive conduct by strangers to him." In the alternative, Claimant requested that the public policy of encouraging good samaritan acts should allow the award to be reduced instead of denied. Claimant provided an affidavit averring to facts stated in her petition.

A hearing was conducted on June 4, 1998, at which Claimant appeared and testified. She was represented by counsel. She stated that her husband was on his way home from work and saw a few guys fighting alongside the road when he decided to stop and break up their fight. The club was taken from him and used against him. The offender who struck her husband was convicted.

Claimant paid the funeral bill for $6,200 to Tezak Funeral Home. (Claimant's exhibit no. 1.) She paid $350 for the cemetery plot at Mount Olivert Cemetery, Romeoville, Illinois. (Claimant's exhibit no. 2.) She paid $421.63 to Catholic Monument Sales, Romeoville, Illinois, for a monument. (Claimant's exhibit no. 3.)

The victim was employed by Meno Stone, Lemont, Illinois. He was earning $400 per week and during the six months prior to his death he earned a total of $9,600. She identified his payroll stubs. (Claimant's exhibit no. 4.) All of Claimant's exhibits were admitted into the record.

On examination by the Assistant Attorney General (AAG), the Claimant acknowledged that she was not present at the incident. The funeral and burial expenses and earnings were not confirmed by the Attorney General's office because the denial was for contributory conduct.

The police reports were admitted into the record. (Respondent's group exhibit no. 1.) Several versions of the incident indicate that a group of men were arguing and the victim struck one of them (Sabin) with the baseball bat type club and one of the others (Howard) took the club away from the victim and struck him with it.

Jason Palmer told the police that three (Sabin, Lenz and Pisciotto) of the four men all told him that the victim approached Sabin and Howard when they were arguing. Sabin and the victim exchanged heated words and the victim struck Sabin with the stick.

Claimant asserts that the victim was performing the role of a good samaritan, but she does not provide any legal support. The provisions of the Good Samaritan Act established "numerous protections for the generous and compassionate acts of [Illinois] citizens who volunteer their time and talents to help others." (745 ILCS 49/2.) However, none of the provisions address the situation of an individual immersing himself into a private dispute. The good samaritan doctrine embodies a public policy protecting one from being "charged with contributory negligence, as a matter of law, in risking his own life or serious injury in attempting to effect a rescue, provided that the attempt is not recklessly or rashly made." (Black's Law Dictionary 694 (6th ed. 1990).) Claimant has not presented any legal precedent to show that the victim's alleged acts afford him a protection beyond the aforementioned general policy pronouncements.

The facts in this case are mainly provided by the group of four offenders. There are no other occurrence witnesses of the events leading to the victim's death. The uncontroverted facts, as gleaned from the police report, indicate that the four offenders were out together at a couple of taverns and had consumed alcohol. They were riding in an automobile and started to argue. One of them (Howard) got out of the car. Two other passengers (Sabin and Lenz) got out of the car and argued with Howard to coax him back into the car. There is no evidence that this argument had escalated into a physical altercation. It can be presumed that the argument was carried out in a heated manner. The victim stopped, got out of his vehicle and inquired as to what was occurring. According to the offenders, the victim struck Sabin with the club before the offenders struck the victim. There is no account, as described by the offenders, where the victim was using the club to separate combatants or to protect one of them or himself. The statements by the offenders may be self-serving and not accurate. However, no other evidence is before the Court.

This is a situation where the victim voluntarily immersed himself into a dispute. It is not a situation where the victim was involuntarily pulled into one. It is not a situation where the victim could not avoid or evade the offenders.

Claimant's own version indicates that the victim's conduct was not performed in a reasonable manner. If the victim believed he was threatened and felt endangered, he should have left the scene. If he had the time to return to his truck and obtain the club, as asserted by Claimant, he surely had time to get into his truck and leave. If he had the club in hand as he approached the offenders, then the credibility of the offenders' versions of the event increases and the Court finds that he had become the aggressor or had improperly escalated the argument. Either

version of the victim's conduct supports a finding that Claimant has failed to demonstrate, legally or factually, that the victim's conduct was such that the claim should not be denied. *In re Application of Catherine Dixon* (1994), 47 Ill. Ct. Cl. 599.

Therefore the denial is affirmed and the case is closed.